HATTIE GATES et al., Defendants in Error, v.
PHILLIP STECKEL et al., Plaintiffs in Error.

**Springfield Court of Appeals, December 11, 1913.**

1. **MINES AND MINING: Mining License: Interest of Licensee Thereunder: Rights.** Licensees for mining purposes only, acquire no estate or interest in the land, mines or mineral, nor have they possession sufficient to enable them to maintain any possessory action. Yet their right to mine cannot be revoked at will and they have substantial rights which the law will protect.

2. ————: **Mining License:'Conditions not Violated, License not to be Revoked.** Where there has been no substantial violation by mining licensees of the terms and conditions of their mining license, the licensor cannot arbitrarily deprive them of their rights under such license.

3. ————: **Forfeiture of Mining Lease: Not Warranted, Forfeiture Set Aside.** The licensor forfeited a mining lease because of alleged violations of the terms thereof. Evidence reviewed in connection with the terms of the license. *Held*, that the forfeiture was not justified as there had been no substantial violation of the terms and conditions of the license and that a court of equity had properly set the forfeiture aside.

4. ————: **License: Violations of Terms by Licensee: Acquiescence by Licensor: Forfeiture not Permitted.** Under a mining lease which contained right of forfeiture on part of licensor in the event licensee failed to do continuous work, licensee did not so continuously mine. Licensor, though aware of such failure, made no complaint until after licensees had resumed work for a week, when a forfeiture was declared. *Held*, that such forfeiture because of a past default which licensor had acquiesced in, should be set aside.

5. **LESSOR AND LESSEE: Forfeiture: Estoppel.** A lessor may be estopped by his overt acts to claim a right of forfeiture as against a lessee.

Writ of Error to Jasper County Circuit Court,
Division Number One—*Hon. Joseph D. Perkins,*
Judge.

AFFIRMED.

*A. G. Young* for plaintiffs in error.

(1)   A license is a contract, and a licensee has a right to enjoy it as long as he complies with its terms. Boone v. Stover, 66 Mo. 430; Sheppard v. Drake, 61 Mo. App. 134; Mining Co. v. Felton, 78 Mo. App. 210; Lytle v. James, 98 Mo. App. 342; Mining Co. v. Mining Co., 106 Mo. App. 66.   (2)   It makes little difference in this case whether the contract introduced in evidence is a lease or license. It is reduced to writing, and was to remain in force for five years, and could only be forfeited upon a failure by plaintiff to comply with its terms.   A license reduced to writing and signed by the licensor gives the licensee a permanent interest in the land.   White on Mines, sec. 193; Fuhr v. Dean, 26 Mo. 120; Deslogue v. Pearce, 38 Mo. 395; Boone v. Stover, 66 Mo. 430; Woodside v. Ciceroni, 3 Fed. 1.   (3)   If a license has been acted upon and expense incurred under it, it cannot be revoked. 18 Am. & Eng. Ency. of Law (2 Ed.), 1145; Harrelson v. Railroad, 151 Mo. 482; Gibson v. Mech. Assn., 33 Mo. App. 180; School District v. Lindsay, 47 Mo. App. 134.

*R. A. Mooneyham* for defendants in error.

(1)   A mining licensee is without possessory right and cannot maintain forcible entry and detainer or trespass, and has no legal remedy for injuries to the possession.   Zinc Co. v. Amsdan, 125 Mo. App. 512. (2)   There is an important distinction between a lease of mining property and a mere license to work the same.   Under a lease the lessee has a corporal interest in the land which would enable him to maintain the action of ejectment, while a licensee is a mere incorporeal hereditament giving the licensee the right of ingress and egrees to take the ore from the land of the licensor, or some other right agreed upon between the parties to be exercised in the land of the licensor.

Supply Co. v. West, 149 Mo. App. 93, and cases cited; Springfield F. & M. Co. v. Cole, 130 Mo. 1; Austin v. Coal Co., 72 Mo. 535; Kirk v. Mattire, 140 Mo. 23; Boon v. Stover, 66 Mo. 430; Chenowich v. Mining Co., 74 Mo. 174; Lunsford v. La Motte, 54 Mo. 426. (3) The licensor has no implied power over the persons or property of the licensee, but he can hold the latter to a strict performance of the conditions of the license and can revoke the license for a breach of the conditions by the licensee. Boon v. Stover, 66 Mo. 430; Chenowich v. Mining Co., 74 Mo. 174; Lunsford v. La Motte, 54 Mo. 426. (4) The right to declare a forfeiture expressly reserved in the lease is equivalent to a reservation of the rights to re-enter. Geer v. Zinc Co., 126 Mo. App. 187, and cases cited; Messer Smith v. Messer Smith, S. 22 Mo. 369; Walker v. Engler, 30 Mo. 130; Clark v. Brookfield, 81 Mo. 503. (5) A mining licensee is without possessory right and cannot maintain forcible entry and detainer or trespass, and in short is without any legal remedy whatever for injuries to the possession. Zinc Co. v. Amsdan, 125 Mo. App. 515; Lytle v. James, 98 Mo. App. 337; Lowe v. Zinc Co., 89 Mo. App. 680; Rochester v. Mining Co., 86 Mo. App. 447.

STURGIS, J.—In this equitable proceeding the trial court after hearing all the evidence set aside a forfeiture of a mining license made by the defendants, Hough and wife, to the plaintiff Hattie Gates and her associates. Hough and wife as owners of the land granted to plaintiffs a license to mine thereon for a term of five years from October 12, 1911, and declared the same forfeited on December 7, 1911, and thereby terminated the right of said licensees to further mine on said land. The defendant licensors sought in the trial court to justify their action in this respect on the grounds that plaintiffs had violated the terms and conditions of their mining license in failing to do contin-

Gates v. Steckel.

nous mining, in failing to pay the royalties when due and in assigning an interest in such license without the consent of the licensors. Without setting out the terms and conditions of the mining license in question it is sufficient to say that the same contained provisions of this character and also a provision that any failure to comply with the terms and conditions of the license in good faith shall end and determine the same and the first parties may enter upon said land without proceedings at law.

The trial court, after hearing all the evidence, found that the plaintiff licensees had not violated any of the terms or conditions of the mining license in such manner as to warrant the forfeiture declared by the defendant landowners. The questions raised are largely questions of fact and, after reading the evidence, we find ourselves in accord with the result reached by the trial court.

While plaintiffs were mere licensees and acquired no estate or interest in the land, mines or mineral and had no possession sufficient to enable them to maintain any possessory action, Joplin Supply Co. v. West, 149 Mo. App. 78, 93, 130 S. W. 156, and cases there cited, yet, their right to mine on this land could not be revoked at will and, having substantial rights which the law will protect, they could not be arbitrarily deprived of their rights under the license in the absence of some substantial violation of the terms and conditions imposed on them by such mining license. [Bingo Mining Co. v. Felton, 78 Mo. App. 210; Boone v. Stover, 66 Mo. 430; Mining Co. v. Mining Co., 106 Mo. App. 66, 80 S. W. 12.]

The plaintiffs after obtaining the mining license in question at once commenced sinking a shaft and did sink a suitable mining shaft to the depth of about ninety feet at an outlay of about $600. Only a small amount of mineral ore was taken from the mine prior to the forfeiture in question, but a more or less prom-

ising "prospect" was discovered. The mining license provides that the ownership of all ores mined shall be and remain in the first parties (licensors) and that payment for same when sold shall be made to the said first parties. It seems to be conceded, however, that the second parties were given special permission to clean and market the small amount of ore mined and that they realized therefrom about thirty-three dollars, of which there was due the licensors $4.30, as royalty. The nonpayment of this small amount of royalty is one of the grounds of forfeiture. It is not shown just how long before the forfeiture was declared that this mineral was marketed but there is evidence that at the time of the sale the amount necessary to pay the royalty was carefully set aside and kept ready by one of the licensees to pay the landowners and that he informed the landowners of this fact and, not having the money then present, offered to go and get it and make the payment but was assured that it was all right and he could pay it to them at any convenient time.

As to the alleged assignment of an interest in the mining license, the evidence shows that the plaintiff licensees made a verbal arrangement with two persons named Holcomb and Steckel, by which they were to carry on the mining operations "six months at a time" for a per cent of the ores mined. The details of this agreement are not very clearly shown but the court was justified in finding that it was not a sale or assignment of the mining license or of any interest in the same. Under the agreement made, Holcomb and Steckel did not become owners or part owners of the mining license but were rather employees, working for a per cent of the mineral ores produced. The licensees were still the sole owners of the mining license and did not lose control of the mining operations. We are not impressed with the good faith of the licensors in declaring the forfeiture in question on this ground, as it appears that on the very day the forfeiture was de-

clared, if not previously, a new mining license was granted to these same parties, Holcomb and Steckel, at a larger royalty. That the landowners were seeking to profit by this forfeiture and the making of a new license at a higher rate of royalty is "a fact that if not admitted point-blank, is hardly denied, and of which the testimony leaves no doubt." [Shoe Co. v. Odd Fellows Hall Co., 133 Mo. App. 229, 243, 133 S. W. 253.]

As to the ground for forfeiture that the licensees failed to do continuous mining, the evidence shows that no work was done during November, 1911, and perhaps during the latter part of October. The defendant licensors were aware of this fact and made no complaint at the time. About December first, the arrangement just mentioned with Holcomb and Steckel was made by the licensees and the active mining operations were then resumed. Such active mining work had been going on at least a week after its resumption before the licensors declared the forfeiture in question. We think the licensors could not thus silently acquiesce in the licensees' stopping work and letting the mine lay idle for a month and, after they had resumed work and mining operations were again progressing favorably, declare a forfeiture for the past default. "The lessor may, in many instances, by his overt acts, be afterward estopped to claim the right of forfeiture, as against the lessee, although his acts do not amount to an absolute recognition of the lessee's rights under the lease. As where the lessor stands by and sees the lessee make subsequent discoveries and expenditures, without objection which are much more valuable than the damages resulting from his breach." [White on Mines and Mining Remedies, sec. 256.]

In Shoe Co. v. Odd Fellows Hall Co., 133 Mo. App. 229, 245, 133 S. W. 253, the court said: "If a lessor would forfeit the term for breaches of contract

by the lessee, he must be prompt in his declaration of forfeiture after he learns of the breaches, and cannot hold his decision in reserve to speculate for some advantage to himself, while he suffers the tenant to incur expense in the belief that he will not be disturbed. [18 Am. and Eng. Ency. Law (2 Ed.), pp. 382, 383 and citations in notes; Garnhart v. Finney, 40 Mo. 449; Hawes v. Favor, 161 Ill. 440.]'' [See, also 2 Taylor Landlord and Tenant (9 Ed.), sec. 498.]

We think this .is a proper case for a court of equity to grant relief against a forfeiture and that the learned chancellor who tried the case below reached a correct. and just conclusion. The judgment will, therefore, be affirmed.

*Farrington, J.,* concurs. *Robertson, P. J.,* not sitting.